AO 91 (Rev. 11/11) Criminal Complaint                                    AUSA Chester Choi (312) 697-4037

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MICHAEL DORMAN

CASE NUMBER: 25 CR 426

**FILED**
7/25/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about July 23, 2025, at Frankfort, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | did knowingly and intentionally possess with intent to distribute a controlled substance, namely five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance. |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

Steven J. Hammar (DPM w/ permission)
_____
STEVEN J. HAMMAR
Task Force Officer,
Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: July 25, 2025 _____

_____
*Judge's signature*

City and state: Chicago, Illinois _____

DANIEL P. MCLAUGHLIN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, STEVEN J. HAMMAR, being duly sworn, state as follows:

1.     I am currently employed by the Des Plaines Police Department as a Task Force Officer assigned to the Drug Enforcement Administration (DEA), Chicago Field Division. I have served as Patrol Officer for five years with the Des Plaines Police Department and assigned to a Cook County Major Crimes Assistance Task Force prior to be assigned to the DEA. I have been a Task Force Officer with the DEA since October 2024.

2.     This affidavit is submitted in support of a criminal complaint alleging that MICHAEL DORMAN has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging DORMAN with possession with intent to distribute narcotics, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.     This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, physical surveillance, my training and experience, as well as the training and experience of other agents with whom I have spoken.

## I.    FACTS SUPPORTING PROBABLE CAUSE

*Summary of Probable Cause*

4.     In summary, and as detailed below, on or about July 23, 2025, pursuant to a probable cause traffic stop and search of a vehicle DORMAN was driving, DORMAN was found in possession of wholesale quantities of suspected cocaine.

*Background of Investigation*

5.     In or around March 2025, a confidential source working with the DEA (the "CS") informed law enforcement about Individual A who, according to the CS, was a multi-kilogram cocaine trafficker.[1] The CS told law enforcement that Individual A's source of supply was large-scale narcotics trafficker that operated out of the Bridgeport/Canaryville neighborhoods in Chicago.

6.     On or about May 1, 2025, the CS informed law enforcement that Individual A would be meeting Individual A's source of supply to obtain five kilograms of cocaine. That day, law enforcement conducted surveillance on Individual A and observed Individual A meet with an individual inside of red Cadillac SUV bearing an Illinois license plate (the "Cadillac"). Based on Illinois Secretary of State records, the Cadillac is registered to DORMAN at an address located on the 500 block

---

[1] The CS has been cooperating with since July 2024. The CS does not receive monetary compensation for his/her cooperation and is not currently facing any charges. The CS has prior convictions for kidnapping, assault, and burglary. The CS has provided information in this investigation, which I believe to be useful and reliable. Some of the information provided by the CS has been corroborated by independently obtained evidence and information verified through a review of law enforcement databases.

of West 45th Place in Chicago (the "Dorman's Residence"), which is in the Canaryville neighborhood.

7.      On or about June 5, 2025, law enforcement received an alert that Individual A's vehicle was located in the vicinity of the Dorman Residence.[2] Law enforcement relocated to that area and observed Individual A's vehicle parked next to the Cadillac. After a short period of time, Individual A's vehicle drove away from the area towards the direction of Individual A's residence. Law enforcement attempted to conduct a traffic stop on Individual A's vehicle, but the vehicle refused to stop and after a short pursuit, law enforcement lost visual sight of Individual A's vehicle.

*Seizure of Cocaine from DORMAN*

8.      On or about July 23, 2025, at approximately 8:45 a.m., law enforcement established surveillance on the Dorman residence. At approximately 3 p.m., law enforcement observed DORMAN exit the Dorman residence, enter the Cadillac alone, and drive away from the area. Law enforcement maintained mobile surveillance on the Cadillac until the Cadillac arrived at the 21400 block of South 80th Avenue in Frankfort, Illinois, at approximately 4:15 p.m. Law enforcement then observed the Cadillac drive towards a dead end at the end of the street, make multiple U-turns, and then park behind a white Dodge Ram pickup truck (the "Ram truck") bearing a California license plate. Law enforcement observed Individual B walk from the Ram

---

[2] On or about April 29, 2025, law enforcement obtained a vehicle tracker warrant from the Circuit Court Cook County for Individual A's vehicle.

truck towards the Cadillac [3]. DORMAN then exited the Cadillac, opened the trunk of the Cadillac, and stood next to Individual B. DORMAN then closed the trunk and reentered the Cadillac through the driver's door as Individual B walked towards the dead-end area of the street where a tractor trailer bearing a California license plate was parked near a home under construction

9.     Over the next several of hours, law enforcement observed multiple pallets being offloaded from the tractor trailer and carried into the home under construction. During this time, DORMAN and Individual B remained in the area and conversed on multiple occasions. At approximately 7:20 p.m., law enforcement observed Individual C exit the front passenger seat of the Ram truck, take out two moving dolly's from the trailer attached to the Ram truck, and take the dolly's to the rear area of the tractor trailer where Individual B was standing[4]. While other individuals continued to unload pallets along with other miscellaneous boxes from the tractor trailer and move them into the under-construction home, law enforcement observed Individual C offload an enclosed wooden crate from the tractor trailer onto the moving dolly and set it to the side as other pallets continued to be offloaded from the truck. Individual B then walked back to the Ram truck and drove the Ram truck closer to the tractor trailer and the aforementioned crate. DORMAN followed

[3] Law enforcement identified Individual B as follows: Based on a review of law enforcement databases, Individual B was the registered the owner of the Ram truck. Surveillance officers reviewed Individual B's driver's license photograph and were able to confirm Individual B's identity.

[4] Law enforcement identified Individual C as follows: Following the seizure of the narcotics described below, law enforcement temporarily detained. At that time, Individual C provided law enforcement his/her identification.

Individual B in the Cadillac and parked behind the Ram truck. DORMAN and Individual B exited their vehicles, walked towards the wooden crate on the moving dolly, and pushed the wooden crate on the dolly to the rear hatch area of the Cadillac. DORMAN and Individual B then loaded the wooden crate into the trunk of the Cadillac, after which, DORMAN reentered the Cadillac and began to reverse his car.

10.     As DORMAN began to reverse the Cadillac, law enforcement approached DORMAN wearing marked police vests and ordered DORMAN to exit the Cadillac where he was detained. A canine officer from the Chicago Ridge Police Department and the officer's drug sniffing canine Storm responded to the area to conduct a free air sniff around the Cadillac. Canine Storm alerted to the presence of narcotics odor from the trunk area of the Cadillac. Law enforcement proceeded to search the trunk of Cadillac where they found the wooden crate. Inside of the crate, law enforcement found sixty bricked-shaped packages that contained suspected cocaine. DORMAN and the suspected narcotics were transported to the Chicago Ridge Police Department. Law enforcement conducted a field test of the substance found inside one of the bricks, which yielded a presumptively positive result for the presence of cocaine. Based on my training and experience, a drug trafficking organization would not provide the value and amount of narcotics found in the Cadillac to an individual who did not have knowledge of what s/he was receiving.

11.     At approximately 10:40 p.m., at the Chicago Ridge Police Department, DORMAN was read his *Miranda* rights. DORMAN verbally stated that he understood his rights and agreed to be interviewed. In summary, and not verbatim,

after being informed about the crate found in the trunk of the Cadillac, DORMAN denied knowing about the contents of the crate. DORMAN later asked something to the effect of "how many were in there." DORMAN also asked what type of sentence he could potentially receive from what was found in the crate,

## II.    CONCLUSION

12.    Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about July 23, 2025, MICHAEL DORMAN did knowingly and intentionally possess with intent to distribute a controlled substance, namely five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance.

FURTHER AFFIANT SAYETH NOT.

Steven J. Hammar (DPM w/ permission)
STEVEN J. HAMMAR
Task Force Officer, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone July 25, 2025.

Honorable DANIEL P. MCLAUGHLIN
United States Magistrate Judge